# Illinois Official Reports

## Appellate Court

---

*People v. Grant*, 2017 IL App (1st) 142956

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TYRICE GRANT, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-14-2956 |
| Filed | February 17, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-591; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Reversed in part and remanded with instructions. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Chan Woo Yoon, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Lisa Sterba, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Cunningham and Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1     Following a bench trial, the defendant, Tyrice Grant, was convicted of one count of reckless discharge of a firearm (720 ILCS 5/24-1.5(a) (West 2012)) and two counts of unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2012)). The trial court sentenced him to three years' imprisonment on each count to be served concurrently. On appeal, the defendant argues that (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt of reckless discharge of a firearm and (2) one of his convictions for UUWF must be vacated as it violates the one-act, one-crime rule. For the reasons that follow, we reverse in part and remand with instructions.

¶ 2     The defendant was charged by indictment with one count of reckless discharge of a firearm and two counts of UUWF, in connection with an incident that occurred on December 8, 2013. The following evidence was adduced at trial.

¶ 3     Chicago police officer Escamilla testified that, around 7:35 p.m. on December 8, 2013, he was on patrol with his partner when he received a call from dispatch regarding a person who had been shot at 3259 West Walnut Street in Chicago. Upon arriving at that location, Officer Escamilla observed a man, later identified as the defendant, standing in the doorway of a two-flat apartment building. As he approached the defendant, he noticed the presence of blood and that the defendant's hand was wrapped in a bandage. When he asked the defendant what happened, the defendant replied that he shot himself. Officer Escamilla instructed the defendant to remove the bandage for "officer safety" and, after the defendant complied, he observed what appeared to be a gunshot wound to the defendant's hand. Officer Escamilla testified that he requested an ambulance and then entered the first-floor apartment where he observed "a lot" of blood in the living room and a semiautomatic handgun "with blood on it" lying on top of a laundry basket in the living room. On cross-examination, Officer Escamilla testified that two other individuals lived in the apartment with the defendant, but they were not present at the time of the shooting.

¶ 4     Evidence technician Eileen Donohoe testified that, on December 8, 2013, she was assigned to collect evidence from a shooting at the Walnut Street residence. During her testimony, she identified various photographs she took of the scene, including photos depicting blood in the living room and the firearm lying on top of the laundry basket. Donohoe further testified that she inventoried the firearm, which contained a live round in the chamber and 10 live rounds in the magazine.

¶ 5     Detective Jose Gomez of the Chicago police department testified that he went to the emergency department at Mount Sinai Hospital, where the defendant had been taken for treatment. There, Detective Gomez introduced himself to the defendant and explained that he had come to speak with him about the shooting at the Walnut Street residence. He advised the defendant of his *Miranda* rights, and the defendant agreed to answer his questions. The defendant told Detective Gomez that he lives at the apartment with his sister and Jamel Bankhead (his sister's boyfriend) and that Bankhead, who works as an armed security guard, keeps a 9-millimeter handgun in his bedroom at the residence. The defendant also stated that he retrieved the gun and "attempted to clear [it]" when he shot himself in the hand.

¶ 6     Following Detective Gomez's testimony, the State presented a certified copy of the defendant's conviction for manufacture/delivery of a controlled substance (case No. 11 CR

0163701). The State rested and the defense moved for a directed finding, which the trial court denied. The defendant did not present evidence and elected not to testify.

¶ 7 At the conclusion of the testimony and arguments, the trial court found the defendant guilty of reckless discharge of a firearm and both counts of UUWF. The court denied the defendant's written motion for a new trial and sentenced him to concurrent terms of three years' imprisonment on each count. This appeal followed.

¶ 8 The defendant's first contention on appeal is that the State failed to prove him guilty of reckless discharge of a firearm beyond a reasonable doubt because there was insufficient evidence that he endangered the bodily safety of "an individual."

¶ 9 When considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the required elements of the crime beyond a reasonable doubt. *People v. Belknap*, 2014 IL 117094, ¶ 67. The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts. *People v. Bradford*, 2016 IL 118674, ¶ 12. Consequently, "a reviewing court will not substitute its judgment for the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *Id.* A conviction will not be overturned unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of the defendant's guilt. *Id.*

¶ 10 Section 24-1.5(a) of the Criminal Code of 2012 (Criminal Code) provides: "A person commits reckless discharge of a firearm by discharging a firearm in a reckless manner which endangers the bodily safety of an individual." 720 ILCS 5/24-1.5(a) (West 2012). Thus, to sustain the conviction of reckless discharge of a firearm, the State had to prove that the defendant (1) discharged a firearm in a reckless manner and (2) endangered the bodily safety of an individual. *People v. Collins*, 214 Ill. 2d 206, 212 (2005).

¶ 11 Here, the defendant concedes that the State satisfied the first element of the offense—namely, that he recklessly discharged a firearm on December 8, 2013. He argues, however, that the State failed to satisfy the second element because there is no evidence that his reckless conduct endangered the bodily safety of "an individual." More specifically, he maintains that the term "an individual," as used in the statute, refers to *another* person or *others* and that, bodily injury to himself does not satisfy the second element of the offense. Thus, the defendant asserts that the evidence presented at trial did not demonstrate beyond a reasonable doubt that his reckless conduct endangered "an individual," since the State presented no evidence that another person or others were in the vicinity of the discharge.

¶ 12 The State responds by arguing that the plain meaning of the statute prohibits the reckless discharge of a firearm in a manner that endangers "an individual" and that the defendant is an individual who endangered the bodily safety of himself. Alternatively, the State asserts that, viewing the evidence in the light most favorable to it, a rational trier of fact could have found that the defendant's reckless discharge of a firearm, inside a residential apartment building, endangered the bodily safety of other residents.

¶ 13 Because the parties disagree about the meaning of "an individual," we must first construe the statutory language before determining whether the State proved the second element of the crime beyond a reasonable doubt.

¶ 14        Our primary goal in statutory interpretation is to ascertain and effectuate the legislature's intent. *People v. Johnson*, 2017 IL 120310, ¶ 15. The best indication of this intent is the statutory language, given its plain and ordinary meaning. *Id.* However, "a court will presume that the legislature did not intend an absurd, inconvenient, or unjust result." *Id.* The words and phrases in a statute should be construed in light of other relevant provisions and not in isolation. *People v. Gutman*, 2011 IL 110338, ¶ 12. We may consider the reason for the law, the problems to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Id.* Where the language is plain and unambiguous, it must be applied without resort to further aids of statutory construction. *Collins*, 214 Ill. 2d at 214. Where the language is ambiguous, however, we may consider external sources, such as legislative history, in order to discern the intent of the legislature. *Id.* The construction of a statute is a question of law which is reviewed *de novo*. *Id.*

¶ 15        In support of his argument that "an individual" refers to someone other than the person who is charged with the offense, the defendant cites *People v. Moreno*, 2015 IL App (3d) 130119.

¶ 16        In *Moreno*, police offers responded to a call regarding a male subject who had shot a firearm off a back porch in a residential neighborhod in Joliet. Upon approach, the officers observed six or seven individuals exit the residence and stand along the railing of a deck, while another person, who also stood on the deck, started firing a gun at the ground. *Id.* ¶ 9. During this incident, the shooter did not fire in the direction of any people. *Id.* Nor was there a ricochet, or evidence that anyone was injured "aside from [the] defendant, who shot himself in the left hand with a blank round in an attempt to demonstrate to others it was not dangerous." *Id.* ¶ 13. On appeal, the Third District Appellate Court reversed the defendant's conviction for reckless discharge of a firearm, concluding that firing a gun into the ground did not rise to the level of recklessness and did not "endanger the bodily safety of *others*." (Emphasis added.) *Id.* ¶ 41. After the court held that the State failed to prove the first element of recklessness, the court went on to state as follows:

> "Even assuming, *arguendo*, defendant's actions were reckless, we are unconvinced that defendant endangered the bodily safety of an individual. No individual was in peril of probable harm or loss. [Citation.] Defendant shot blank and live rounds into the dirt. At the time of the incident, the partygoers on the porch were behind defendant, reducing their chances of being hit by a potential ricochet to virtually zero." *Id.* ¶ 44.

As such, the court determined that the defendant's conduct did not create "a 'substantial' risk of endangering the bodily safety of *others*" since the partygoers were behind the defendant as he shot into the dirt. (Emphasis added.) *Id.* ¶ 46.

¶ 17        Although the court in *Moreno* did not construe the words "an individual" or address whether the defendant's injury to his left hand satisfied the second element of the offense, the defendant notes that its analysis properly focused on whether the defendant's conduct endangered the bodily safety of another person or others. In this regard, the court's analysis is consistent with other cases applying the reckless discharge of a firearm statute. See, *e.g.*, *People v. Giraud*, 2012 IL 113116, ¶¶ 21, 23 (noting that the offense of reckless discharge of a firearm requires proof that "one or more other persons" be endangered as a result of the discharge of a firearm); *Collins*, 214 Ill. 2d at 218-19 (examining whether the record demonstrates that an individual, other than the defendant, was in the vicinity of the reckless

discharge); *People v. Watkins*, 361 Ill. App. 3d 498, 499 (2005) (noting that "the bullets [the defendant] fired into the air would endanger the bodily safety of others in a residential area"). Based upon *Moreno* and the aforementioned case law, the defendant argues that "putting oneself in danger is not an element of the reckless discharge statute" and the State cannot rely on the fact that he shot himself in the hand to satisfy the second element of the offense.

¶ 18    In the State's view, evidence that the defendant endangered the bodily safety of himself is sufficient to establish the second element of the offense. According to the State, the legislature's use of "an individual" instead of "another individual," demonstrates that it did not intend to limit the scope of the statute to persons other than the defendant. In support of its argument, the State draws our attention to the language of the aggravated discharge of a firearm statute, which uses the words "another person" in defining the offense. See 720 ILCS 5/24-1.2 (West 2012).

¶ 19    The Second District Appellate Court considered, and rejected, this argument in *People v. Peters*, 180 Ill. App. 3d 850 (1989). In *Peters*, the State filed a criminal complaint alleging that the defendant committed the offense of reckless conduct where he " 'caused bodily harm to himself in that while acting in a reckless manner he discharged a gun striking himself in the chest.' " *Id.* at 851. Similar to the reckless discharge of a firearm statute at issue here, the reckless conduct statute at issue in *Peters* provided that " '[a] person who causes bodily harm to or endangers the bodily safety of *an individual* by any means, commits reckless conduct if he performs recklessly the acts which cause the harm or endanger safety, whether they otherwise are lawful or unlawful.' " (Emphasis in original.) *Id.* (quoting Ill. Rev. Stat. 1987, ch. 38, ¶ 12-5(a)). After the trial court dismissed the complaint for failing to state a cause of action, the State appealed, arguing that "the legislature, by using the words 'an individual' instead of 'another individual,' did not intend to [limit] the scope of the statute to persons other than defendants." *Id.*

¶ 20    On appeal, the court determined that the State's argument lacked merit. The court observed that both the first-degree murder statute and the battery statute, in defining those respective offenses, use the words "an individual" and that the committee comments to section 9-1(a) of the Criminal Code, which defines the offense of first-degree murder, make clear that the word " 'individual' is employed 'to designate the victim, to distinguish him from the "person" who is the offender.' " *Id.* at 853 (quoting Ill. Ann. Stat., ch. 38, ¶ 9-1(a), Committee Comments, at 17 (Smith-Hurd 1979)). The court reasoned that the State's construction of the word "individual" would lead to "the absurd result *** that a person could be convicted of murdering himself or herself or of committing a battery against himself or herself." *Id.* at 854. After examining the language of the reckless conduct statute and the legislature's intent in enacting the law, the court reasoned as follows:

> "[I]t strains the credulity of this court to believe that the legislature intended the offense of reckless conduct to apply in situations where the charging instrument alleges that the offender harmed or endangered himself or herself only. We are satisfied that the legislature, in its wisdom, did not intend such an illogical reading or application of the statute. Rather, we agree with the defendant that although the legislature on occasion will proscribe certain conduct which primarily harms or endangers the person who is charged with the crime, the General Assembly did not intend to punish, through the vehicle of the reckless conduct statute, behavior that only harms the person who is reckless. It is much more likely or reasonable, as the

defendant surmises, that the legislature decided that the injury the reckless conduct inflicts on the person who acts in a reckless manner is sufficient punishment and that it was unwise or unnecessary to subject that person to an additional, criminal penalty." *Id.* at 853-54.

The court therefore held that "an individual," as used in the reckless conduct statute, referred to "someone other than the person who is charged with the offense of reckless conduct." *Id.* at 853. Because the defendant's reckless conduct harmed only himself, the court affirmed the dismissal of the criminal complaint alleging reckless conduct. *Id.* at 855.

¶ 21    Although *Peters* involved a different statutory provision, we find its reasoning instructive. Initially, we note that the reckless conduct statute in *Peters* and the reckless discharge of a firearm statute in this case are essentially the same, differing only in the type of reckless conduct engaged in by the defendant. Both provisions provide that the conduct must endanger the bodily safety of "an individual." In light of the similarities between the two statutes, it would be incongruous to hold that, under one statute, a defendant who shoots himself with a firearm may not be convicted of reckless conduct, but under the other statute, a defendant may be convicted of reckless discharge of a firearm. Thus, for the same reasons that the court in *Peters* found no merit in the State's argument regarding the legislature's use of the words "an individual," as opposed to "another person," we similarly find no merit in the State's argument in the instant case. We agree with the holding in *Peters* and find that the term "an individual" as used in section 24-1.5 of the Criminal Code (720 ILCS 5/24-1.5 (West 2012)), refers to someone other than the defendant.

¶ 22    In support of our holding, we note that the legislative transcripts reveal that the underlying purpose of the reckless discharge of a firearm statute was to target the issue of drive-by shootings and to "fill a void" between the offense of reckless conduct, a Class A misdemeanor, and aggravated discharge of a firearm, a Class 1 felony. Representative Homer explained:

"If, under current law, a person possesses a firearm in a motor vehicle and even shoots it up in the air while driving around, that would still . . . that would be a Class A misdemeanor [reckless conduct]. If the person fires it at somebody or shoots it into a building that's occupied, under current law it would be a Class 1 felony because it would become aggravated discharge of a firearm. But what happens if somebody just recklessly discharges a firearm? Doesn't necessarily aim it at someone or aim it into an occupied building, but goes around town or out in the country or wherever it is shooting off a gun recklessly, with reckless abandon? Under current law, that would be a Class A misdemeanor [reckless conduct]. And so the Gentleman says we should have some middle ground here and call it reckless discharge of a firearm. That's what this Bill does." 88th Ill. Gen. Assem., House Proceedings, April 22, 1993, at 210 (statements of Representative Homer).

¶ 23    Notably, at the time of passage of the reckless discharge of a firearm statute, *Peters* had already been decided. Because the legislature borrowed nearly verbatim the language of the reckless conduct statute, which the appellate court had already interpreted in *Peters*, for the reckless discharge of a firearm statute, we presume that it intended to incorporate the court's interpretation of that language. See *People v. Coleman*, 227 Ill. 2d 426, 438 (2008) ("[W]hen a court interprets a statute and the legislature does not amend it ***, we presume that the legislature has acquiesced in the court's understanding of legislative intent.").

¶ 24       After examining the statutory language and weighing the parties' arguments, we find that the defendant presents the only reasonable reading of the reckless discharge of a firearm statute. In determining legislative intent, we may consider the consequences of construing the statute one way or another, and we presume that the legislature did not intend to create absurd, inconvenient, or unjust results. *Gutman*, 2011 IL 110338, ¶ 12. The defendant's interpretation offers a reasonable and just result in which a defendant may only be found guilty of reckless discharge of a firearm where he endangers the bodily safety of another person or others. The State's broad reading of the statute, on the other hand, has the potential to lead to absurdity and is inconsistent with the language of the statute itself, the intent of the legislature in enacting the law, and Illinois case authority. We conclude, therefore, that our legislature intended the term "an individual" to mean someone other than the "person" who is charged with the offense of reckless discharge of a firearm.

¶ 25       We now consider whether the State satisfied its burden of proof—whether the evidence presented at trial demonstrated beyond a reasonable doubt that the defendant's reckless conduct endangered the bodily safety of another person or others.

¶ 26       In this case, the evidence adduced at the defendant's trial, viewed in the light most favorable to the State, was not sufficient to establish that his reckless conduct created a dangerous situation, such that another individual was in peril of probable harm or loss. The State has not directed us to, nor could we find, any evidence in the record that the defendant's conduct of discharging a firearm endangered the bodily safety of another person. No witnesses testified that they were in the vicinity of the scene when the accident occurred. Indeed, Detective Gomez and Officer Escamilla both testified that no one else was present in the apartment at the time the defendant shot himself in the hand, and there was no evidence that anyone was in the second-floor apartment. The record is also devoid of any indication that anyone was near the defendant's apartment when the weapon discharged or that the apartment was in close proximity to other apartment buildings or houses. Rather, the evidence establishes that the defendant, while home alone in a two-flat apartment building, shot himself in the hand while attempting to "clear" the firearm; there is no evidence that another person or others were in the vicinity of the discharge.

¶ 27       We find support for our determination in *Collins*. In that case, our supreme court addressed whether the State's evidence demonstrated that the defendant endangered the bodily safety of an individual when he discharged a firearm numerous times into the air in a residential neighborhood of Chicago. *Collins*, 214 Ill. 2d at 210. In its analysis, the court explained that, to satisfy the second element of the offense, "the State must establish that a defendant's reckless conduct created a dangerous situation—such that an individual was in peril or probable harm or loss." *Id.* at 215. In so holding, the Court noted that the State need not show that the defendant was pointing a gun in anyone's direction or that any particular individual was likely to be hit by a bullet. *Id.* at 215-16.

¶ 28       Nonetheless, the supreme court examined whether the record demonstrated "that an individual was in the vicinity of the discharge." *Id.* at 218-19. The *Collins* court noted that a State's witness testified that she heard at least 15 shots when she approached the defendant's backyard. Further, two women were inside the defendant's house and two police officers were standing 25 to 30 feet away when the defendant discharged his firearm. *Id.* Finally, the record contained evidence of at least four homes in proximity to the location of the shooting, and therefore, the shooting occurred in a residential area. *Id.* Thus, the supreme court

concluded that a rationale trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* at 219.

¶ 29    However, unlike *Collins*, the record before us contains very little evidence from which to conclude that an individual was in the vicinity of the discharged firearm. Although the defendant lived in the apartment with his sister and sister's boyfriend, Officer Escamilla testified that no one was in the apartment at the time of the accident. While we recognize that the defendant's apartment is located in the City of Chicago, the State presented no evidence as to whether other houses or apartment buildings were located near or in the vicinity of the defendant's apartment. Conversely, our supreme court in *Collins* noted that at least four other homes were in proximity to the shooting in that case. See *id.* at 218. Put simply, the State in this case presented no evidence demonstrating that another person or others were in the vicinity when the weapon discharged.

¶ 30    In sum, we find that discharging a firearm in an empty apartment in Chicago, without evidence that other people or homes were in the vicinity of the discharge, was insufficient to establish that the defendant endangered the bodily safety of another individual or others. We conclude, therefore, that a rationale trier of fact could not have found beyond a reasonable doubt that the defendant endangered the bodily safety of an individual. Accordingly, we reverse the defendant's conviction for reckless discharge of a firearm.

¶ 31    Finally, the defendant argues, and the State concedes, that one of his convictions for UUWF must be vacated pursuant to the one-act, one-crime rule because both convictions are predicated upon the possession of a single firearm.

¶ 32    The one-act, one-crime rule prohibits convictions for multiple offenses based on the same physical act. *People v. King*, 66 Ill. 2d 551, 566 (1977). Under the one-act, one-crime rule, a court should impose a sentence on the more serious offense and vacate the less serious offense. *People v. Artis*, 232 Ill. 2d 156, 170 (2009).

¶ 33    We agree with the parties that the defendant's convictions for UUWF violate the one-act, one-crime rule because they both arose out of the same physical act—possession of the same loaded firearm. When multiple convictions violate the one-act, one-crime rule, we must vacate the less serious of the two convictions. *Id.* But "when it cannot be determined which of two or more convictions based on a single physical act is the more serious offense, the cause will be remanded to the trial court for that determination." *Id.* at 177. In order to determine whether one offense is more serious than another, we look to the possible punishments for the two offenses and which offense has the more culpable mental state. *Id.* at 170-71. Here, the two charges alleged the same offense which had the same mental states and carried the same penalties. Because we cannot determine which of the two offenses is more serious, we remand this case to the trial court to make that determination.

¶ 34    For the foregoing reasons, we reverse the defendant's conviction for reckless discharge of a firearm and remand to the trial court with instructions to determine which UUWF conviction is less serious and to vacate that conviction. We further instruct the trial court to resentence the defendant on the remaining UUWF count.

¶ 35    Reversed in part and remanded with instructions.