2021 IL App (1st) 190044-U

No. 1-19-0044

Order filed February 5, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | Nos. 17 MC4 3211 |
| | ) | YE 377762 |
| v. | ) | YE 377763 |
| | ) | YE 377764 |
| | ) | YE 609983 |
| | ) | |
| MARVIN CARBAJAL, | ) | Honorable |
| | ) | Kristyna C. Ryan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Sufficient evidence supports defendant's convictions for failing to reduce speed to avoid an accident, driving without insurance, driving under the influence of alcohol (DUI), and DUI with a blood alcohol concentration equal to or greater than 0.08. Under the one-act, one-crime doctrine, we remand to the trial court to determine which of defendant's two DUI offenses is less serious and vacate the conviction on that offense.

¶ 2    Following a bench trial, defendant Marvin Carbajal was found guilty of carrying a concealed weapon while under the influence of alcohol (430 ILCS 66/70(d) (West 2016)) (count I), failure to reduce speed to avoid an accident (625 ILCS 5/11-601(a) (West 2016)) (count II), driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2016)) (count III), operating a motor vehicle without insurance (625 ILCS 5/3-707 (West 2016)) (count IV), and DUI with a blood alcohol concentration equal to or greater than 0.08 (625 ILCS 5/11-501(a)(1) (West 2016)) (count V). The trial court sentenced defendant to concurrent terms of 18 months' supervision on counts I, III, and V, and supervision on counts II and IV. Defendant argues on appeal that the State failed to prove he drove or had actual control of a vehicle, and therefore, he was not proven guilty beyond a reasonable doubt on counts II through V. Defendant further argues that his convictions on counts III and V violate the one-act, one-crime doctrine. Defendant does not challenge his conviction on count I. We remand to the trial court to determine which of counts III and V should be vacated, and otherwise affirm.

¶ 3    Defendant was charged by misdemeanor complaint with count I and by citation with counts II-V.

¶ 4    Before trial, the court granted the State's motion *in limine* to take judicial notice of the conversion factor for converting a blood serum alcohol concentration to a whole blood alcohol concentration, and that a blood serum alcohol concentration of 290 milligrams per deciliter is equivalent to a whole blood alcohol concentration of 0.245.

¶ 5    At trial, Maywood police officer Wozniczka[1] testified that, around 10:30 p.m. on May 29, 2017, he was dispatched to the intersection of First Avenue and Bataan Drive to assist the fire

_____

[1] Officer Wozniczka's first name is not in the report of proceedings.

department. Wozniczka arrived 5 to 10 minutes later. An ambulance and accident response team were on the scene, where a BMW vehicle had crashed into a tree in a ditch. Skid marks on the street led into the ditch.

¶ 6    Defendant, whom Wozniczka identified in court, was the only civilian present. A member of the fire department told Wozniczka that defendant was armed and provided Wozniczka with defendant's Firearm Owners Identification (FOID) card and concealed carry license (CCL). Wozniczka approached defendant, who allowed Wozniczka to recover a firearm from his waistband. Wozniczka requested defendant's driver's license and proof of insurance. Defendant provided his driver's license and stated he did not have insurance. Copies of defendant's FOID card, CCL, and driver's license were admitted into evidence.

¶ 7    Defendant was placed in an ambulance. Wozniczka asked defendant what happened and defendant "stated he was involved in the accident" and that he "had been drinking." Wozniczka smelled alcohol on defendant's breath and person. Defendant "was very confused" as to what was happening and why he was in the ambulance. Defendant was taken to the emergency room. Wozniczka completed a report and, after the vehicle was towed, followed to the emergency room. No other civilian arrived after defendant left.

¶ 8    At the hospital, security staff and a sheriff's deputy gave Wozniczka firearm magazines found on defendant's person. Wozniczka approached defendant, who was cursing at the nurses. Wozniczka asked defendant why he was doing that and defendant did not answer.

¶ 9    After defendant returned from a CAT scan, Wozniczka read him a "Warning to Motorist" and observed him for 20 minutes. During that time, defendant was "belligerent" toward the nurses,

stated he did not need or want treatment, and attempted to remove a C-brace nurses had put on his neck.

¶ 10    After 20 minutes, Wozniczka offered defendant the opportunity to submit to blood or urine testing, and defendant refused. Defendant's speech was slurred, he remained confused, and Wozniczka could still smell alcohol on his person. Defendant had bruising on his face and his eyes were bloodshot. Wozniczka arrested defendant for DUI, advised him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and served him a summary suspension notice. Wozniczka arrested defendant based on the accident, defendant's alcohol odor, bloodshot eyes, admission that he had been drinking, and the lack of a sample showing defendant was not intoxicated. Defendant never indicated to Wozniczka that he had not been driving the crashed vehicle.

¶ 11    On cross-examination, Wozniczka testified that he was at the police station at 10:46 p.m. when he was dispatched to the scene of the accident, which was about one mile or less away. The fire department was dispatched first. When Wozniczka arrived, a fireman was speaking to defendant about 10 to 15 feet from the vehicle. Wozniczka did not see the accident, know when it occurred, or know firsthand whether defendant drove the vehicle. When asked if he knew whether the accident could have happened at 7 or 8 p.m., Wozniczka stated that the accident would have been reported sooner if it had happened earlier. Wozniczka explained that Bataan has high traffic due to its proximity to Interstate 290, First has high traffic as "a major thoroughfare," and the ditch where the vehicle crashed was visible. However, the only dispatch Wozniczka received was from the fire department.

¶ 12    Defendant told the firemen he was armed, and they relayed that information to Wozniczka. Defendant's FOID card and CCL were valid. At the scene of the accident, defendant was

cooperative and did not refuse treatment. Wozniczka did not know if other civilians were present before he arrived or after he left the scene, or if anyone besides defendant was in the vehicle when it crashed. Wozniczka did not request defendant perform field sobriety tests because Wozniczka was unsure of the extent of defendant's injuries. Wozniczka did not recall if defendant was bleeding and did not know what treatment, if any, defendant received in the ambulance. Wozniczka did not ask when or what defendant drank, or know whether he drank before or after the accident.

¶ 13    Wozniczka was not trained in accident reconstruction, but assumed that the skid marks on the road came from the crashed BMW. He did not know how fast the BMW was traveling when it crashed. Wozniczka assumed that defendant was the driver and drove under the influence, but did not know for certain.

¶ 14    On redirect examination, Wozniczka testified that the accident was visible from the road and he saw it as he approached the scene. The firearm he recovered from defendant was functional and loaded, with a bullet in the chamber. Wozniczka did not hear anyone mention that other people were at the scene or involved in the accident. Defendant did not tell Wozniczka that someone else was driving. Defendant became combative at the hospital when security staff questioned him about the magazines they discovered on his person.

¶ 15    On recross examination, Wozniczka confirmed that defendant slurred his speech, which Wozniczka knew because he spoke to defendant later, after he sobered during the I-bond process.

¶ 16    Laura King testified that she was working as a nurse at Loyola University Medical Center on May 29, 2017. Between 11 and 11:30 p.m., defendant arrived by ambulance. Defendant was uncooperative with hospital staff while they attempted to assess and treat him, continually

attempted to remove his C-collar, failed to follow directions, and used obscenities. He smelled of alcohol, his speech was slurred, and he was bruised.

¶ 17    Because defendant was involved in an accident, a doctor requested King draw a blood sample that was sent to a lab in the hospital. The results were included in the medical records King and the staff used to assess and treat defendant. Defendant's alcohol blood serum level was 290. Based on defendant's blood serum level and her training as a nurse, King concluded that defendant was drunk. King identified People's Exhibit No. 2 as defendant's lab results showing his alcohol blood serum level as 290.

¶ 18    On cross-examination, King testified that she reviewed a report by the paramedics showing they did not administer defendant any medication. King did not know which lab technician processed defendant's blood work. Patients are not allowed to leave the hospital without a driver if their blood serum level is 80 or above.

¶ 19    During redirect examination, King testified that, when patients are uncooperative, hospital staff rely on paramedic reports to learn what happened to the patient. The paramedics give the report via radio and then provide a paper report when they arrive. King identified People's Exhibit No. 3 as the paramedic report for defendant. Over defense counsel's objection, the trial court permitted King to testify about the report's content to explain "what she relied on" in treating defendant. King testified that the report relayed that defendant was placed in a C-collar, knew his name, date of birth, and location, and stated that he was driving, lost control, and hit a tree. The report further detailed that defendant wore a seat belt and travelled about 30 miles per hour, the air bags deployed, he remained conscious, and he complained of back pain.

¶ 20    On recross examination, King stated she did not see the accident and did not know who was driving the vehicle. She relied on the paramedic's report and did not know whether the paramedics saw the accident. The paramedic who prepared the report told King that defendant stated he was driving. She did not know when the accident occurred, when defendant started and stopped drinking, what he drank, or how many drinks he consumed.

¶ 21    Following closing arguments, the trial court stated it would not consider People's Exhibit No. 3, the paramedic report. The court believed that when Wozniczka approached defendant at the scene of the accident, defendant would have been capable of stating he was not driving had that been the case, and found that Wozniczka's assumptions about the accident were reasonable. Given the amount of traffic in the area of the accident, the court believed it unreasonable that the accident could have occurred hours before Wozniczka arrived. The court found defendant guilty on all counts.

¶ 22    Defendant filed a motion to reconsider, again arguing in relevant part that the State did not prove he drove the crashed BMW. The court denied the motion.

¶ 23    Following a hearing, the court imposed concurrent terms of 18 months' supervision on counts I, III, and V, and supervision on counts II and IV.[2]

---

[2] The electronic docket reflects supervision of 18 months on count I and 18 months and 1 day on counts II, IV, and V, and does not reflect a sentence on count III. Moreover, the half-sheet, sentencing order, and electronic docket all list December 18, 2019, as the termination date for supervision. However, when a court's oral pronouncement conflicts with the written order, the oral pronouncement controls. *People v. Carlisle*, 2015 IL App (1st) 13114, ¶ 87. Defendant does not challenge any aspect of his sentence on appeal.

¶ 24    Defendant appeals, first arguing that the evidence is insufficient to sustain his convictions on counts II through V because the State did not prove beyond a reasonable doubt that he drove or had actual control of the crashed vehicle.

¶ 25    When considering challenges to the sufficiency of the evidence, a reviewing court determines whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *People v. Jackson*, 2020 IL 124112, ¶ 64. The reviewing court will not overturn the conviction unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Id.* The trier of fact is charged with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Id.* Therefore, the reviewing court will not retry the defendant or substitute its judgment for the trier of fact's when considering the weight of the evidence or the credibility of witnesses. *Id.*

¶ 26    The same standard applies whether the evidence is direct or circumstantial, and circumstantial evidence, if it meets the standard, may sustain a conviction. *Id.* ¶ 70. "Circumstantial evidence is proof of certain facts and circumstances from which the fact finder may infer other connected facts which usually and reasonably follow from the human experience and is not limited to facts that may reasonably have alternative, innocent explanations." *People v. Diaz*, 377 Ill. App. 3d 339, 345 (2007). A trier of fact need not find beyond a reasonable doubt each fact in a chain of circumstances so long as all the evidence, taken together, satisfies the trier of fact of the defendant's guilt beyond a reasonable doubt. *Jackson*, 2020 IL 124112, ¶ 70. Nor must a trier of fact disregard inferences flowing normally from the evidence, or elevate "all possible explanations consistent with innocence" to the level of reasonable doubt. *Id.*

¶ 27    The Illinois Vehicle Code (Code) prohibits a person from driving or being in actual physical control of a vehicle with a blood alcohol level of 0.08 or more or while under the influence of alcohol. 625 ILCS 5/11-501(a)(1), (2) (West 2016). The Code further mandates reducing speed to avoid an accident (625 ILCS 5/11-601(a) (West 2016)), and prohibits operating a vehicle without insurance (625 ILCS 5/3-707 (West 2016)). The only element of the offenses that defendant challenges is whether he drove or had actual control over a vehicle.

¶ 28    Courts consider four factors to determine whether a defendant had actual physical control of a vehicle. Those factors include "whether the defendant: (1) possessed the ignition key; (2) had the physical capability to operate the vehicle; (3) was sitting in the driver's seat; and (4) was alone with the doors locked." *People v. Morris*, 2014 IL App (1st) 130512, ¶ 17. However, the factors are guidelines and not an exhaustive list; the issue is determined on a case-by-case basis, and the absence of a factor is not controlling. *Id.* (citing *People v. Slinkard*, 362 Ill. App. 3d 855, 859 (2006)).

¶ 29    Moreover, where evidence shows that a person operated a vehicle, it is axiomatic that he had physical control over it. See *People v. Niemiro*, 256 Ill. App. 3d 904, 909 (1993) ("[I]f a person is shown to be operating a vehicle, that person is also, by the very nature of operating that vehicle, exerting actual physical control over the vehicle.").Thus, in *Niemiro*, where a vehicle was observed colliding with other vehicles, it was "obvious" that "*someone* was driving or operating the vehicle and, by that action, exercising actual physical control over its movement." (Emphasis in original.) *Id.* at 905, 909-10. The issue, therefore, was "whether there was sufficient evidence for the court to have found that it was [defendant] who was operating the vehicle at the time of the accident." *Id.* at 910; see also *Slinkard*, 362 Ill. App. 3d at 859-60 (citing *Niemiro* to note that factors are not

conclusive, including where there is "inference that the defendant must have driven the car earlier").

¶ 30    At trial, Wozniczka testified that he responded to the scene of the accident and saw one vehicle crashed into a tree in a ditch, with skid marks leading from the road to the ditch. Defendant was 10 to 15 feet from the crashed vehicle and the only civilian present. Defendant's face was bruised. At Wozniczka's request, defendant provided his driver's license and stated he did not have insurance. Defendant told Wozniczka he was "involved" in the accident and had been drinking. Defendant never stated that anyone else was involved in the accident, and Wozniczka never heard mention of any other person involved in the accident. Viewed in the light most favorable to the State, that evidence is not so improbable or unsatisfactory as to raise a reasonable doubt that defendant drove the vehicle. See *Jackson*, 2020 IL 124112, ¶¶ 64, 70; see also *Diaz*, 377 Ill. App. 3d at 345 ("[A] trial court may find a conviction for driving under the influence of alcohol based on circumstantial evidence.").

¶ 31    While no one saw defendant drive the vehicle, "observation of the defendant in the act of driving is not an indispensable prerequisite for a conviction for driving under the influence and the act may be established by other evidence, direct or circumstantial." *Niemiro*, 256 Ill. App. 3d at 910. Here, that evidence included Wozniczka's testimony that defendant was the only civilian on the scene of a one-car accident where skid marks led from the road to a crashed vehicle, admitted he was involved in the accident, and never mentioned anyone else. Further, although the State did not establish the exact time the accident occurred, the trial court reasonably rejected defendant's argument that the accident could have happened hours earlier because the crashed vehicle was visible from a busy street and defendant admitted his involvement with the accident. See *Jackson*,

2020 IL 124112, ¶ 70 ("[T]he trier of fact is not required to disregard inferences that flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt.").

¶ 32    Lastly, while ownership of a vehicle may give rise to an inference that a defendant was driving (see *Slinkard*, 362 Ill. App. 3d at 858), and as defendant observes, the State did not prove defendant owned the BMW, the trial court was charged with weighing the evidence, and we will not overturn defendant's conviction where the circumstantial evidence presented is not so unsatisfactory as to raise a reasonable doubt of defendant's guilt. See *Jackson*, 2020 IL 124112, ¶ 64. Accordingly, we conclude that the State proved beyond a reasonable doubt that defendant drove the vehicle, and sufficient evidence therefore exists to sustain his convictions.

¶ 33    Next, defendant argues that his convictions for DUI (count III) and DUI with a blood alcohol content of 0.08 or above (count V) violate the one-act, one-crime rule because they are based on the same physical act, driving. Defendant requests we vacate his conviction on count V. The State agrees that defendant's convictions violate the one-act, one-crime rule but argues that we should remand to the trial court to determine which conviction should be vacated.

¶ 34    As defendant admits, he did not properly preserve this issue below. However, defendant requests plain-error review.

¶ 35    The plain error doctrine allows a reviewing court to consider an unpreserved error when a clear or obvious error occurred and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence."

(Internal quotation marks omitted.) *People v. Coats*, 2018 IL 121926, ¶ 9. Violations of the one-act, one-crime doctrine implicate the second prong of plain-error. *Id.* ¶ 10. The first consideration is whether an error occurred. *Id.* ¶ 11.

¶ 36    Under the one-act, one-crime doctrine, a defendant may not be convicted of multiple offenses based on the same physical act. *People v. Grant*, 2017 IL App (1st) 142956, ¶ 32. If a violation of the rule occurs, the conviction on the less serious offense should be vacated. *Id.* ¶ 33. In determining which offense is less serious, the reviewing court considers the possible punishments and culpable mental state of each offense. *Id.* When a reviewing court cannot determine which of two or more convictions based on a single act is less serious, it will remand to the trial court for that determination. *People v. Artis*, 232 Ill. 2d 156, 177 (2009).

¶ 37    Defendant's convictions on counts III and V were based on the physical act of driving. See 625 ILCS 5/11-501(a)(1), (2) (West 2016); see also *People v. Hamerlinck*, 2018 IL App (1st) 152759, ¶ 3 (aggravated DUI convictions violate rule since they are based on same physical act of driving). Accordingly, they violate the one-act, one-crime rule, and the less serious conviction should be vacated. *Grant*, 2017 IL App (1st) 142956, ¶ 33.

¶ 38    Neither offense requires a particular mental state. 625 ILCS 5/11-501(a)(1), (2) (West 2016); see also *Bohner v. Ace American Insurance Co.*, 359 Ill. App. 3d 621, 625 (2005) (noting that aggravated DUI is "an offense that does not require proof of any particular mental state"). Defendant's charges also carry the same possible penalties. See 625 ILCS 5/11-501(c)(1) (West 2016). Accordingly, we are unable to determine which of defendant's offenses are less serious.

¶ 39    Nevertheless, defendant argues that we should vacate his conviction on count V, relying on *People v. Kizer*, 365 Ill. App. 3d 949 (2006) and *People v. Cook*, 2011 IL App (4th) 090875.

In *Kizer*, the defendant was convicted of DUI and DUI with a blood alcohol content of 0.08 or greater, and the reviewing court vacated the latter conviction under the one-act, one-crime doctrine. *Kizer*, 365 Ill. App. 3d at 951, 962. In *Cook*, the defendant was convicted of aggravated DUI, aggravated DUI with a blood alcohol content of 0.08 or greater, and aggravated DUI under the combined influence of alcohol and other drugs, and the reviewing court vacated the latter two convictions. *Cook*, 2011 IL App (4th) 090875, ¶¶ 34-36. Neither court explained its departure from the principle set forth in *Artis* that, when two offenses require proof of the same culpable mental state and have the same potential punishments, the reviewing court cannot determine which offense is less serious and should remand to the lower court to make that determination. See *Artis*, 232 Ill. 2d at 177.

¶ 40    More recently, this court decided *Grant*, 2017 IL App (1st) 142956, in which we relied on *Artis* to remand where a defendant was convicted of two offenses requiring the same mental state and carrying the same potential punishments. See *Grant*, 2017 IL App (1st) 142956, ¶ 33. Accordingly, we will adhere to *Artis* and remand to the trial court to determine whether count III or V is the less serious offense and should be vacated. See *Artis*, 232 Ill. 2d at 177 ("the better course is to continue to adhere to the principle that when it cannot be determined which of two or more convictions based on a single physical act is the more serious offense, the cause will be remanded to the trial court for that determination").

¶ 41    For the foregoing reasons, we remand to the circuit court of Cook County to determine which of counts III and V is less serious and vacate the conviction on that offense, and otherwise affirm.

¶ 42    Affirmed in part and remanded in part.